# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 14, 2012 Session

## AEGIS SCIENCES CORPORATION v. LOU ANN ZELENIK, ET AL.

**Direct Appeal from the Circuit Court for Davidson County**
**No. 10C2913      Joseph P. Binkley, Jr., Judge**

---

**No. M2012-00898-COA-R3-CV - Filed January 16, 2013**

---

J. STEVEN STAFFORD, J., DISSENTING:

I respectfully dissent from the majority opinion in this case. The majority affirms summary judgment on the basis that Aegis is unable to show that a reasonable person of ordinary intelligence could find that the advertisement was capable of a defamatory meaning. Instead, I would hold that summary judgment is inappropriate in this case, reverse the trial court, and remand for further proceedings.

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04.  The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial.  *Hannan v. Alltel Publ'g Co*., 270 S.W.3d 1, 8–9 (Tenn. 2008).  However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. Accordingly, it is the Defendant's burden to show that they are entitled to summary judgment. The Defendants argue that they have accomplished this goal by negating the essential element that the statement was, in fact, defamatory to Aegis. As stated by the majority, the trial court may determine that, as a matter of law, a statement is not defamatory only when "the statement is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense." *Biltcliffe v. Hailey's Harbor, Inc.*, No. M2003-02408-COA-R3-CV, 2005 WL 2860164, at *4 (Tenn. Ct. App. Oct. 27, 2005) (citing *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990)).

The advertisement in this case clearly shows Senator Black giving Mr. Black a check, for a considerable sum of money, made payable to Aegis.  The advertisement states that the

check was funded by Tennessee taxpayers. The majority concludes, however, that the advertisement "states nothing with respect to Aegis other than it received one million dollars from the State of Tennessee." Respectfully, the issue before this Court is not governed solely by what is expressly stated in the advertisement, but by what the advertisement is "capable" of conveying in the eyes of a reasonable person. *Biltcliffe*, 2005 WL 2860164, at \*4 (citing *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990)). Indeed, the Tennessee Supreme Court has held that an action for defamation may lie even when the defamatory message is not expressly stated, but when the defamation is conveyed by implication. *See Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978). In addition, on a motion for summary judgment, courts are directed to review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). The advertisement at issue, while directed at Senator Black, is reasonably capable of conveying the message that Aegis accepted improper benefits through state-funded contracts due to its president's personal relationship with Senator Black.

Thus, the question becomes whether an allegation that Aegis accepted improper benefits is defamatory to Aegis. As stated by the majority, a statement is defamatory "if it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." *Biltcliffe*, 2005 WL 2860164, at \*4 (quoting Restatement (Second) of Torts § 559 (1977)). While the majority is correct that the law of defamation applies generally to protect a person's reputation within the community, the law is especially concerned about defamatory statements that tend to prejudice a party in his business, trade, office or profession. *See, e.g.*, *Smith v. Fielden*, 326 S.W.2d 476, 479 (Tenn. 1959); *McWhorter v. Barre*, 132 S.W.3d 354, 364–365 (Tenn. Ct. App. 2003); W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 112 at 790 (5th ed. 1984) ("The law has always been very tender of the reputation of tradesmen, and therefore words spoken of them in the way of their trade will bear an action that will not be actionable in the case of another person."). "[A] corporation may maintain an action for a libel or a slander respecting its business or credit, or if it has been defamed by a false imputation about its financial soundness or business ethics." 50 Am. Jur. 2d Libel and Slander § 334 (footnote omitted). Additionally, "[a] statement reflecting adversely on the business capacity or methods of a corporation, or on its credit or solvency, or on *its ethical conduct*, may be actionable . . . ." 53 C.J.S. Libel and Slander; Injurious Falsehood § 60 (footnote omitted) (emphasis added). Thus, an allegation that goes to the ethical conduct of a corporation may constitute defamation:

> Defamatory statements . . . include words that impute a want of integrity in the discharge of the duties of office or employment. . . .

Where a statement impugns the basic integrity of a business, an action for defamation lies . . . . Aspersions which undercut a corporation's reputation for discharging its duties with integrity and have the likely effect of harming the business fall within the ambit of defamation per se. A corporation has been libeled if its reputation for adhering to the moral standards of the community in which it sells its products is attacked in a fashion likely to harm the corporation. A corporation may be defamed per se by statements which cast aspersions on its honesty.

50 Am. Jur. 2d Libel and Slander § 209 (footnotes omitted).

Drawing all reasonable inferences in favor of Aegis, I must conclude that the statements in the advertisement call into question Aegis' "basic integrity" and reputation in the community. As such, there exists a genuine issue as to whether a reasonable person could legitimately conclude that the statements in the advertisement defame Aegis' business reputation. Indeed, I am unable to conclude, as a matter of law, that the allegation that Aegis procured contracts with the State through an improper personal relationship with a Senator is incapable of harming the business reputation of Aegis. The Tennessee Supreme Court has held that "where . . . doubts arise" as to whether a statement is defamatory, the determination is the "province of the jury." *Magee v. Stark*, 20 Tenn. 506, 1840 WL 1510, *3 (Tenn.1840); *see also Rapid Circuits, Inc. v. Sun Nat. Bank*, 2011 WL 1666919, *12 (E.D. Pa. May 3, 2011) ("Where there is any doubt that the communication disparages or harms the complainant in his business or profession, that doubt must be resolved in favor of the complainant; even where a plausible innocent interpretation of the communication exists, if there is an alternative defamatory interpretation, it is for the jury to determine if the defamatory meaning was understood by the recipient."). Because "a reasonable jury could legitimately resolve the fact in favor of one side or the other," a genuine issue exists precluding summary judgment. *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993) "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al*, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn. 1995)).

Having determined that the advertisement is not reasonably capable of conveying a defamatory meaning, the majority pretermits consideration of the additional basis for the trial court's ruling. Because I conclude that summary judgment was improperly granted on the issue of whether the statement was defamatory, I go on to consider the remaining basis for the trial court's grant of summary judgment: that the statements in the advertisement were

-3-

true or substantially true. The trial court in this case concluded that the statement in the advertisement was "not factually false," but instead was "true or at least substantially true." As discussed by the majority, in order to support a claim for libel, a plaintiff carries the burden of proving that the statement was "false and defamatory." ***Gibbons v. Schwartz-Nobel***, 928 S.W.2d 922, 927 (Tenn. Ct. App. 1996). In ***Stones River Motors, Inc. V. Mid-South Publ'g Co.***, 651 S.W. 2d 713 (Tenn. Ct. App. 1983), we explained the truth requirement, stating:

> The damaging words must be factually false. If they are true, or essentially true, they are not actionable, even though the published statement contains other inaccuracies which are not damaging. Thus, the defense of truth applies so long as the "sting" (or injurious part) of the statement is true. . . . [I]t is not necessary to prove the literal truth of accusation in every detail . . . . [Instead,] it is sufficient to show that the imputation is substantially true, or, as it is often put, to justify the "gist," the "sting," of the "substantial truth" of the defamation.

***Id.*** at 229 (quoting W. Prosser, Law of Torts, § 116, p. 798 (4ᵗʰ ed. 1971)). Accordingly, liability for defamation depends on whether the "gist" or "sting" of the statement is false. To determine what constitutes the "gist" of an alleged defamatory statement, I note that:

> The "sting" or gist of an allegedly defamatory remark is defined as the heart of the matter in question, that is, the hurtfulness of the utterance, or the substance of the report when considered as a whole. When determining the gist or sting of allegedly defamatory material, a trial court must look at the highlight or pertinent angle of the article, and not to items of secondary importance which are inoffensive details, immaterial to the truth of the defamatory statement.

53 C.J.S. Libel and Slander; Injurious Falsehood § 163. Thus, when the sting of the statement is true or substantially true, there can be no liability for defamation.

However, the Tennessee Supreme Court has cautioned that: "It is no defense whatever that individual statements within the article were literally true. Truth is available as an absolute defense only when the defamatory meaning conveyed by the words is true." ***Memphis Pub. Co. v. Nichols***, 569 S.W.2d 412, 420 (Tenn. 1978) (citing ***Brown v. First National Bank***, 193 N.W.2d 547, 553 (Iowa 1972)). In ***Memphis Publishing Company v. Nichols***, the Tennessee Supreme Court held that the plaintiffs made out a proper claim for

-4-

defamation when the defendant newspaper printed an article that stated that the plaintiff was shot by a man's wife after the wife found the plaintiff in her home with her husband. *Nichols*, 569 S.W.2d at 420. Nothing in the article specifically stated that the plaintiff and the shooter's husband were having an affair. In reality, the shooting took place when a number of people were gathered at the shooter's home and there was no allegation that the plaintiff and the shooter's husband had ever engaged in an adulterous affair. The trial court granted a directed verdict in favor of the defendant newspaper, concluding that nothing printed by the newspaper was false. The Tennessee Supreme Court, however, reversed and held for the plaintiff, stating:

> The proper question is whether the [m]eaning reasonably conveyed by the published words is defamatory, "whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Fleckenstein v. Friedman*, 266 N.Y. 19, 23, 193 N.E. 537, 538 (1937). *See* *Lawlor v. Gallagher Presidents Report, Inc.*, 394 F.Supp. 721 (S.D.N.Y. 1975). The publication of the complete facts could not conceivably have led the reader to conclude that [the plaintiff] and [the shooter's husband] had an adulterous relationship. The published statement, therefore, so distorted the truth as to make the entire article false and defamatory.

*Nichols*, 569 S.W.2d at 420. Accordingly, the Supreme Court held that while the literal meaning of the newspaper article was true or substantially true, the defamatory implication of the article was untrue. Therefore, the Court concluded that the plaintiff's defamation claim survived despite the literal truth of the statement. *See also* *Pate v. Service Merchandise Co., Inc.*, 959 S.W.2d 569, 574 (Tenn. Ct. App. 1996) ("Extrinsic facts may [] be used to show the defamatory meaning of words that are not defamatory on their face."). Thus, *Nichols* stands for the proposition that "statements literally true may be actionable if they imply facts that are not true." *Isbell v. Travis Elec. Co.*, No. M1999-00052-COA-R3-CV, 2000 WL 1817252, at *6 (quoting Robert D. Sack & Sandra S. Baron, Libel, Slander & Related Problems § 3.6 (2d ed. 1994). "The rationale behind this rule is that, when truthful statements carry a defamatory innuendo, the factual implication should also be true to justify the implication." *Isbell*, 2000 WL 1817252, at *6 (quoting *Fitzgerald v. Tucker*, 737 So .2d 706, 717 (La. 1999)).

The advertisement at issue states that: "[Senator] Black's spending spree included a million bucks for a drug testing company. The company's owner: Diane Black's husband." In this case, Aegis does not dispute that it received over $1,000,000.00 in contracts to

perform drug testing on behalf of the State of Tennessee. It also does not dispute the Senator Black was a Senator, and voted on the state budget, during at least some of the time that Aegis was receiving money from these contracts. Thus, Aegis admits the literal truth of the statement contained in the advertisement.

Aegis argues, however that the "sting" of the advertisement is not that Aegis received state contracts, but that it did so in a way that was improper, unethical or illegal. Indeed, I have concluded that the advertisement is reasonably capable of conveying the message that Aegis accepted improper benefits through state-funded contracts due to its President's personal relationship with Senator Black. Like in the *Nichols* case, the literal truth of the advertisement is not at issue; instead, the defamatory meaning of the advertisement is conveyed through implication. Thus, the Court must consider not whether the literal truth of the advertisement is true or substantially true, but whether the "[m]eaning reasonably conveyed by the published words" is true or substantially true. *See Nichols*, 569 S.W.2d at 420. Aegis disputes any allegation that it acted improperly in securing the contracts with the State. Indeed, in response to the Defendants' motion for summary judgment, Aegis submitted the affidavit of R. Frank Moser, Jr., the Vice President of Business Development for Aegis. In his affidavit, Mr. Moser states that:

> Aegis, before, during, and since Diane Black's membership in the Tennessee legislature, has performed work and has furnished services to various departments of the state government of Tennessee. Each and every contract between [Aegis] and any agency of the state for services at any time has been the result of a competitive process involving a request for proposal issued by the relevant department of the State of Tennessee, responses by possible vendors on a competitive basis to that [request], and a fully competitive process for the award of contracts for services. ***Aegis has never been given any "no-bid" contracts by any department, agency, or the State of Tennessee as a whole. Any statement or implication to the contrary is not true.***

(emphasis added). Thus, Aegis argues that the meaning conveyed by the advertisement, that it improperly benefitted from state contracts due to its President's personal relationship with a Senator, is untrue and that the trial court erred in granting summary judgment to the defendants on the basis of the truth of the statements contained in the advertisement.

In this case, Mr. Moser's affidavit presents competent evidence that when viewed in the light most favorable to it, shows that the implication that Aegis acted improperly or

unethically in securing the state contracts is false. *See Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003) (requiring, at the summary judgement stage, that the court "review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor"). "The question before us, then, is whether the inclusion of the fact that [all of Aegis' state contracts were competitively bid], would 'have a different effect on the mind' of the hearer, in terms of creating a defamatory implication, than the effect created by the true statements actually made." *Isbell*, 2000 WL 1817252, at *6. I note that internal Lou Ann Zelenik campaign documents contained in the record show that it was the campaign's goal during the election to highlight that Senator Black had awarded "no-bid" state contracts to her husband's company because that allegation reflected negatively on Senator Black's popularity with voters. The term "no-bid" is not specifically stated in the advertisement, nor is the alleged fact that all the contracts were, in fact, competitively bid. Thus, the issue is whether the omission of the fact that the contracts were competitively bid was part of an innuendo to suggest that "no-bid" contracts were awarded to Aegis based on Senator Black's relationship to the company. *See Hunt v. Tangel*, No. 01A01-9705-CV-00199, 1997 WL 778989, at *3 (Tenn. Ct. App. Dec. 19, 1997) (quoting *Smith v. Fielden*, 326 S.W.2d 476, 480 (Tenn. 1959) ("In [] cases [of defamation by implication] the words are said to require an innuendo; that is, a statement of circumstances which give to the words a signification and meaning which they do not have on their face, but which cannot enlarge, extend, or change the sense of the words.")). Considering the evidence in the light most favorable to Aegis, I simply cannot conclude that the Defendants' omission of the fact that all contracts were competitively bid would be "no more damaging to the [Aegis'] reputation, in the mind of the average person, than an absolutely truthful statement would be." 53 C.J.S. Libel and Slander; Injurious Falsehood § 164; *see also Nichols*, 569 S.W.2d at 420 (framing the issue as "whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced"). Indeed, summary judgment is rarely appropriate in cases involving the substantial truth of the facts in the alleged defamatory statement:

> It has been said that a libel claim can only rarely be dismissed on the rationale that the statements complained of are substantially true, as the notion of substantial truth necessarily implies a thread of untruth, and the conclusion that a statement is substantially true will therefore involve a determination that whatever errors are in the statement are irrelevant in the minds of the audience.

53 C.J.S. Libel and Slander; Injurious Falsehood § 164. Thus, I conclude that disputed issues of material facts exist as to whether the defamatory message conveyed by the advertisement is true or substantially true. Therefore, summary judgment on this issue was inappropriate.

Based on the foregoing, I would reverse the grant of summary judgment and remand for all further proceedings as may be necessary.

_____
J. STEVEN STAFFORD, J.